[L. A. No. 16483. In Bank.—January 30, 1941.]

HORTENSIA M. ROMERO et al., Appellants, v. THE DEPARTMENT OF PUBLIC WORKS OF THE STATE OF CALIFORNIA et al., Respondents.

Tanner, Odell & Taft and S. W. Odell for Appellants.

C. C. Carleton, Chief Counsel, and Frank B. Durkee, C. R. Montgomery and Robert E. Reed for Respondents.

SHENK, J.—The plaintiffs appealed from a judgment of dismissal entered on an order sustaining the defendants' demurrer to the complaint.

The complaint shows the following:

In July, 1891, Bonifacio Marquez was the owner of land bounded on the west by the Pacific Ocean and on the south by the city of Santa Monica. In that month he agreed to sell and convey to Pacific Improvement Company a strip of his land 200 feet in length and 100 feet wide, bordering on the ocean. The consideration for the grant was the sum of one dollar and the benefits to be derived by him from the construction and operation of a railroad between the city of Los Angeles and the Southern Pacific wharf at Santa Monica. The agreement provided: "In case said railroad shall not be located on said land, this agreement shall be null and void." The Pacific Improvement Company located and constructed the railroad in accordance with the agreement. On September 8, 1891, while the railroad was in the course of construction, Bonifacio Marquez died intestate and Maria Antonia Oliverez de Marquez was appointed administratrix of his estate. The Pacific Improvement Company filed a petition in the probate proceedings, alleging performance of the agreement and asking for a conveyance of the 100 foot strip. Pursuant to an order of court, a deed was executed and delivered by the administratrix on October 27, 1892, conveying a strip 100 feet wide a distance of approximately 200 feet, containing about 46/100 acres of land. The deed provided: "This deed is made upon the express condition that the land hereby conveyed shall be used by the party of the second part, its successors or assigns, for railroad purposes, and in the event that said party of the second part, its successors or assigns, shall fail so to use said land for railroad purposes then and thereupon said land shall revert to and become vested in the heirs of Bonifacio Marquez, deceased."

The Pacific Improvement Company and its successors, Southern Pacific Company and Pacific Electric Railway Company, commenced and continued the operation of a railroad on said strip or a portion of it for about forty years.

On August 16, 1922, California Highway Commission, acting on behalf of the Department of Public Works of the State of California, adopted a resolution providing for the "acquisition of a right of way for highway purposes over and upon" the strip of land described in the above mentioned deed. The Department of Public Works filed an action "for the purpose of condemning a right-of-way for a highway across said lands". No summons was ever issued in said action or served upon the administratrix of the estate of Bonifacio Marquez named therein as a defendant, nor upon any of the heirs, some of whom are the plaintiffs herein. In that action, however, the corporate defendants voluntarily appeared, and a stipulated judgment was entered providing for a decree of condemnation of the property of those defendants, namely, Southern Pacific Company, Pacific Electric Railway Company, and others. An interlocutory judgment of condemnation was entered in said action on August 28, 1922, and a final judgment in July, 1925. Pursuant to the stipulated judgment the westerly 60 feet of the 100 foot strip were condemned for highway purposes and the Southern Pacific Company and the other appearing defendants received as damages the cost of the re-location and re-construction of the right of way and railroad bed on the remaining 40 feet of the 100 foot strip, and continued the operation of the railroad on said 40 foot strip until on or about January 25, 1934, when the operation of the railroad on said land ceased, all materials were removed, and the strip was wholly abandoned for railroad purposes. It was alleged that after such abandonment the Department of Public Works entered upon the westerly 10 feet of the remaining 40 foot strip and improved said 10 foot strip as part of the highway. Possession was so taken and improvement pursued without any adjudication in the pending condemnation action or in any other proceeding.

On April 24, 1934, the heirs of Bonifacio Marquez or their representatives filed an action in the superior court in Los Angeles County to quiet their title to the 100 foot strip of land. In August, 1934, the same parties appeared and filed an answer in the condemnation action in which judgment had been entered in July, 1925. The plaintiff in the condemnation action moved to dismiss the action as to said appearing defendants. The motion was denied and judgment for the de-

fendants, heirs of Marquez, followed. A stipulation was thereupon entered into between the parties in both the condemnation action and the quiet title action, in which it was agreed that if the plaintiff in the condemnation action should prevail on its appeal to the District Court of Appeal from the judgment in favor of the defendants, heirs of Marquez, their claimed title to the 10 foot strip would be deemed to be adjudged thereby; that if the judgment should be affirmed, the several heirs would accept a designated proportion of the award for said 10 foot strip; but that if the judgment on appeal did not go to the merits the stipulation was to be ineffective. On the appeal (*People* v. *Southern Pacific R. Co.*, 17 Cal. App. (2d) 257 [61 Pac. (2d) 1184]), the court held that the motion of the plaintiff to dismiss the action as to said defendants, heirs of Marquez, pursuant to section 581a, Code of Civil Procedure, should have been granted. That decision made ineffective the stipulation between the parties, and expressly relegated the defendants affected thereby to a prosecution of the pending action to quiet title for an adjudication of their title or their rights to compensation for the taking of said 60 foot strip. (*People* v. *Southern Pacific R. Co., supra,* at page 262.)

By the present action subsequently filed, the plaintiffs sought a declaration of their title to said 100 foot strip, and the mandate of the court directing the defendants to proceed with the prior condemnation proceeding, or in a new condemnation proceeding, or in the action herein, to an adjudication of the amount due to the plaintiffs as compensation for the taking of said 60 foot strip and said 10 foot strip or of any right, title or interest of the plaintiffs therein. It was also alleged that prior to the filing of the action herein the plaintiffs duly served a written claim and demand for the payment to them of compensation, which was rejected.

The defendants filed a general demurrer to the complaint which was sustained and the judgment of dismissal followed.

On this appeal the plaintiffs contend that the condition contained in the administratrix's deed hereinabove quoted and the alleged abandonment of the strip of land for railroad purposes are determinative of their right to compensation for said 70 foot strip. They rely on *Johnston* v. *City of Los Angeles,* 176 Cal. 479 [168 Pac. 1047]; *Papst* v. *Hamilton,* 133 Cal. 631 [66 Pac. 10]; *Parsons* v. *Smilie,* 97 Cal. 647 [32 Pac.

702]; *Liebrand* v. *Otto,* 56 Cal. 542; *Moakley* v. *Blog,* 90 Cal. App. 96 [265 Pac. 548], and similar cases.

The defendants contend that the condition should not be construed to effect a reversion or a right of re-entry, because such title or right is not predicated on a cessation of the use of said land for railroad purposes, but on a failure to put said land to such use; that the word "fail", as employed in said covenant, does not mean "cease"; therefore, a use for railroad purposes having been alleged, the judgment is conclusively supported by the cases of *Hasman* v. *Elk Grove Union High School,* 76 Cal. App. 629 [245 Pac. 464], *Booth* v. *County of Los Angeles,* 124 Cal. App. 259 [12 Pac. (2d) 72], and *O. T. Johnson Corporation* v. *Pacific Elec. Ry. Co.,* 19 Cal. App. (2d) 306 [65 Pac. (2d) 368].

There is merit in the contention of the plaintiffs that the word "fail" as used in said deed should be read with the meaning contended for by them. Webster's New International Dictionary, second edition, applies both meanings to the word "fail", namely, "to keep or cease from an appointed, proper, expected, or required action . . . " When the Pacific Improvement Company applied to the court for an order directing the deed to be executed, it represented that it had fully performed the agreement on its part. Considered in the light of that fact it may be assumed that the court by its order and the administratrix by the execution and delivery of the deed intended the language to provide for a reversion in the event of a cessation of the use of said strip for railroad purposes.

When the state in the condemnation proceeding acquired the title to the 60 foot strip for highway purposes it thereby prevented its use for railroad purposes. As to so much of said property, the condition that it should be used for railroad purposes became impossible of further performance by operation of law. In other words, the public necessity for highway purposes as to that portion which was conclusively established in the condemnation proceeding, prevented further performance of the condition. The authorities generally are to the effect that the owner of the possibility of a reverter prior to a breach of the condition is not entitled to compensation when the property is taken under the law of eminent domain. Such cases hold that the possibility of voluntary abandonment by non-user is so remote

and improbable that it has no substantial value to be estimated in a condemnation proceeding. They recognize, however, that the owner of the fee or the reversionary interest should have a separate valuation of his interest where the land taken has some special value to him, as where the underlying lands are shown to be mineral bearing or otherwise of value separately from the use of the surface of the land; but that otherwise the law will not take notice of the separate value of the fee and of the user where there is no substantial difference in their values, and if, in such case, at the time fixed for the valuation the reversion has not occurred, the reversionary interest is said not to have any compensable value in a condemnation proceeding. (*Southern Pac. R. Co.* v. *San Francisco Sav. Union,* 146 Cal. 290 [79 Pac. 961, 106 Am. St. Rep. 36, 2 Ann. Cas. 962, 70 L. R. A. 221]; *City of San Gabriel* v. *Pacific Elec. Ry. Co.,* 129 Cal. App. 460 [18 Pac. (2d) 996]; *Lutes* v. *Louisville & Nashville Railroad Co.,* 158 Ky. 259 [164 S. W. 792]; Nichols, Eminent Domain, 2d ed., vol. 1, p. 243; see, also, *Lyford* v. *City of Laconia,* 75 N. H. 220 [72 Atl. 1085, 139 Am. St. Rep. 680, 22 L. R. A. (N. S.) 1062].)

■ No difficulty presents itself as to the alleged right of the plaintiffs in and to the easterly 30 feet of said 100 foot strip or to their alleged right to compensation for their interest in said 10 foot strip. It appears from the complaint that the reversionary interest in the easterly 40 feet had vested the entire title or interest in the plaintiffs after the abandonment by the railroad company, and, as appears by the judgment in the condemnation action, by the state itself. The revesting of the plaintiffs' ownership in the easterly 40 feet must be deemed to be shown by the facts alleged in the complaint. If the facts so alleged be supported by proof and it be shown that there had been an abandonment of said 40 foot strip by the railroad company, and subsequently a taking of 10 feet of said strip by the state, the plaintiffs, rather than the railroad, would be entitled to compensation for that portion of the land formerly deeded by the administratrix of the estate of their ancestor.

■ The plaintiffs contend that the facts alleged respecting the 60 foot strip show that they are also entitled to some compensation for the taking thereof. The contention is based on the argument that by the alleged agreement Bonifacio Marquez retained a particular interest in the 100 foot strip,

namely, the right to the benefits to be derived from the operation of the railroad to be constructed and which was constructed thereon; that that was, in fact, the only consideration received for the grant of the strip; that therefore when the state deprived the plaintiffs of their reversionary interest in said 60 foot strip, it took from them not merely a naked reversionary title, but what may be considered a substantial benefit retained by the grantor of said strip, which benefit was the consideration for the grant, and that such benefit had a substantial and ascertainable value for which the plaintiffs would be entitled to be compensated under the decision in *Southern Pacific Railroad Co.* v. *San Francisco Savings Union, supra.* In that case it was held that generally in a condemnation proceeding the value of the easement condemned is the value of the fee for the purpose of assessing the value of the right or interest taken under the power of eminent domain; but that where the fee has a definite substantial value to the owner, the easement taken must be valued separately. In that case the sub-surface of the land taken for surface easement purposes contained oil deposits. It was concluded that the fee retained by the owner was property with an ascertainable value which must be estimated separately. It is contended that the declaration in that case leads to the conclusion herein that the plaintiff's reversionary interest in said 60 foot strip has a separate value from the value of the easement condemned by the state, and that the plaintiffs have a right to have that value estimated. It is apparent that these considerations bear solely upon the question of the value of the reversionary right or interest which it has been concluded herein the plaintiffs have alleged in their complaint. The question is one of fact to be determined by the fact finding authority after proof of value has been introduced in evidence, and is therefore not a question which can be settled by a consideration of the issues raised by the demurrer. No satisfactory reason appears why the heirs or their representative joined as defendants in the condemnation proceeding were not served in that proceeding and the value of their reversionary interest determined as alleged therein. Unless the defendants now have some valid defense to the recovery of damages for the taking of the alleged condemned reversionary interest, the plaintiffs would be entitled to the payment of any value which it may be found to have.

The foregoing observations dispose of all the contentions urged in respect to the issues raised by the demurrer. We conclude that the complaint states a cause of action and that the defendants should be put to such defenses as may be available to them. The plaintiffs have been precluded from seeking any relief in the condemnation proceeding because of the application of the provisions of section 581a of the Code of Civil Procedure by the District Court of Appeal in *People* v. *Southern Pacific R. Co., supra.* ▆ However, we know of no way by which this court may now compel the defendants to revive the old or institute a new condemnation proceeding. The present complaint is undoubtedly sufficient in form to tender the issue of damages to an interest in property taken for a public use. (See *Tyler* v. *Tehama County,* 109 Cal. 618, 625 [42 Pac. 240].)

The judgment is reversed.

Carter, J., Curtis, J., Gibson, C. J., Peters, J., *pro tem.,* Knight, J., *pro tem.,* and Traynor, J., concurred.

A petition for a rehearing was denied February 27, 1941.