[Civ. No. 2494.  Fourth Appellate District.—November 6, 1940.]

CECIL H. PHILLIPS, as Trustee, etc., Appellant, v. SARA B. BRUCE et al., Respondents.

CECIL H. PHILLIPS, as Trustee, etc., Appellant, v. KARO-LINE SCHAAF et al., Respondents.

C. Douglass Smith for Appellant.

Rutan, Mize & Kroese and Harold H. Coyle for Respondents.

MARKS, J.—Plaintiff brought two actions to quiet his title to five per cent of the oil and gas produced and saved from two parcels of land in the Huntington Beach oil field in Orange county. The cases were consolidated for trial. Defendants had judgment and this appeal followed. Three oil leases are involved.

Defendant Karoline Schaaf owned ten acres and the defendant Sara B. Bruce owned five acres of land, parts of which are here. involved. The Bruce property adjoined the north half of the Schaaf property on the east. William Schaaf, as trustee, holds an interest in the oil produced from the Schaaf property.

The first lease we must notice, although the property is not directly involved, covers the north one hundred fifty feet of the east fifty feet of the Schaaf property and the north one hundred fifty feet of the west fifty feet of the Bruce property. It is called the "Community Lease". It is admitted that a well was drilled on this property, was placed on production, and is still producing; that plaintiff has received his five per cent overriding royalty from that well. It is admitted that he is entitled to continue to receive that royalty as long as oil, gas or other hydrocarbons are produced in paying quantities from the well drilled on this particular property. The property described in the community lease was expressly excepted from each of the two leases we will next mention.

Under date of October 12, 1935, Sara B. Bruce, as owner, executed an oil lease with the Pacific Southwest Oil Company, as lessee, whereby she leased her property (except the portion in the Community Lease) to the lessee for the term of twenty years and as long thereafter as oil, gas or other hydrocarbons may be produced therefrom in paying quantities.

The lease referred to the Community Lease and stated that the Community Lease provided for actual drilling on the property there described within forty-five days. The lease involved here then provided:

"In the event drilling is commenced upon said Community Lease within the said time therein provided, then this lease shall terminate as to all rights and obligations unless the

Lessee herein shall on or before ninety (90) days after the discovery of oil in paying quantities from said Community Lease, or on or before ninety (90) days after the abandonment of drilling upon said Community Lease, the earlier date to control, commence the actual physical operation of drilling in the ground for oil on the land hereby leased. It is agreed that cessation of drilling in good faith on said Community Lease for any period of twenty (20) days, shall constitute an abandonment of drilling.

"In the event drilling is commenced upon said Community Lease within the said time therein provided, then, unless required under the above provisions to commence drilling sooner, this lease shall terminate as to all rights and obligations, unless the Lessee herein shall, on or before ten (10) months from date hereof, commence the actual physical operation of drilling in the ground for oil on the land hereby leased, it being the intention that the period of time taken to discover oil or to abandon said Community Lease well, shall not extend the time to commence drilling under this lease more than ten (10) months from date hereof . . .

"Notwithstanding the provisions hereinabove contained in Paragraph 16, it is hereby agreed that this lease is made upon the condition that in the event Lessee shall not commence the actual drilling of the first well on the leased premises in the manner and within the time provided in Paragraph 4 (just quoted), then this lease shall *ipso facto* terminate and become null and void without any notice whatever."

On the same day Karoline Schaaf leased her property, except that portion described as the Community Lease, to the same lessee. Except as to the lessors and the descriptions, the two leases are identical in form.

Both leases were duly recorded on December 17, 1935.

Under date of December 3, 1935, both leases were assigned by the lessees to the Twentieth Century Oil Company. The assignments were recorded on January 14, 1936.

Under date of December 9 or 19, 1935, the Twentieth Century Oil Company assigned an overriding royalty of five per cent of the production from both leased properties and other properties to the plaintiff. This assignment was recorded on December 27, 1935.

It is admitted that no drilling operations were ever started and that no well was ever drilled by the Pacific Southwest Oil Company nor the Twentieth Century Oil Company on either parcel of property.

On November 30, 1936, Gottfried Schaaf and Karoline Schaaf brought an action to quiet title to their property against Pacific Southwest Oil Company and Twentieth Century Oil Company. On January 18, 1937, a judgment was entered quieting their title to the property against the two named defendants.

On December 11, 1936, Sara B. Bruce brought a similar action against the same defendants. Judgment was entered in her favor on January 18, 1937.

Plaintiff was not made a defendant in either action. He argues that these judgments are not binding on him, which is probably true.

Under date of February 18, 1938, the landowners leased their respective properties, excepting that described in the Community Lease, to the J. E. F. Oil Company, which drilled wells on the leased property and is now producing oil therefrom.

■ Since the judgment in this case was rendered the case of *Payne* v. *Callahan,* 37 Cal. App. (2d) 503 [99 Pac. (2d) 1050], was decided. That case holds that when a lessee in an oil lease such as we have here, assigns an overriding royalty to another, the assignee acquires an interest in the real property leased which is a *profit à prendre* in gross, which interest is "limited in duration to the life of the lease", and which cannot be voluntarily conveyed by the lessee to the lessor without the consent of the assignee. (See, also, *Callahan* v. *Martin,* 3 Cal. (2d) 110 [43 Pac. (2d) 788, 101 A. L. R. 871].)

■ Defendants contend that under the rule of the Payne case the original leases under which plaintiff claims were terminated and brought to an end by the failure of the lessees to commence the actual physical operation of drilling for oil on the leased premises within ten months from the dates of the leases.

This contention must be sustained. The leases did not require the landowners to do anything to terminate them in the event that the lessees failed to drill within ten months from their respective dates. By the clear terms of the leases such

failure to drill terminated them. It is admitted that there were no drilling operations under those leases. Therefore the leasehold interests in the properties ended by the very terms of the leases on August 12, 1936.

Plaintiff claims under these leases. He took his interest with notice of their terms. His interest ended with the legal termination of the leases on August 12, 1936. (*Payne* v. *Callahan, supra.*)

Plaintiff seeks to escape from these conclusions under the following provisions which appeared in both leases:

"This lease is made on condition that the Lessee shall not sell any interest in the leasehold created hereby, or any rights to or interest in the oil and gas in place, without the prior written consent of Lessor, and upon breach of said condition, this lease shall terminate, at Lessor's option. Lessee shall have the right to sell percentages and interests in and to the oil, gas and other hydrocarbon substances to be produced and saved under this lease."

Plaintiff argues that the lessors expressly authorized the execution of assignments by the lessees; that the assignments by the lessees to him were under this authority; that they had the same effect as though made by the landowners.

It is rather clear from the quoted paragraph that the landowners intended to prohibit the lessees, without their consent, from assigning any interest in the oil that would constitute an interest in the freeholds or in the leaseholds; that they only authorized assignments of such interests in the oil produced as would not infringe on these estates. However that may be, the assignments were by the lessees and were subject to all the terms of the leases. The lessees could only convey a part of the estates which they then owned. They could not convey a greater estate. Nothing in the leases made the lessees the agents of the landowners in making such assignments. The lessees could convey no part of the landowners' titles. As the assignment here in question was made by the lessees out of their leasehold estates, the interests created by the assignment could not survive the leases. As the leases were lawfully terminated on August 12, 1936, plaintiff's interest ended on that date.

The judgment is affirmed.

Barnard, P. J., and Griffin, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 23, 1940.