465 P.2d 605

**Vern C. EISELE and Patricia J. Eisele, Appellants,**

**v.**

**Wolodymyr J. KOWAL and Orysia Kowal, his wife; John F. Swartz, as Trustee; Richard W. Neuman and Lucy Neuman, his wife, Appellees.**

**No. 1 CA–CIV 730.**

Court of Appeals of Arizona, Division 1, Department B.

Feb. 24, 1970.

Fenton J. McDonough, Scottsdale, for appellants.

Harold Goldman, Phoenix, for appellees.

EUBANK, Presiding Judge.

The appellants are mortgagors, appealing from a decree of foreclosure and denial of their counterclaim seeking cancellation of the note and mortgage here in issue. Their main contention is that the mortgagees, in failing to discharge a prior encumbrance by a certain date, breached a "condition subsequent" in the mortgage, which caused it to lose all legal effect. We must determine whether the trial court was correct in holding that the mortgagees' subsequent discharge of the prior encumbrance amounted to a "substantial compliance" sufficient to prevent nullification of the mortgage, an event which by appellants' own description would amount to a forfeiture.

The appellees Kowal were the owners of a sizeable tract of land in Paradise Valley. In September, 1962, when there were six mortgages outstanding on various parts of the land and the Kowals were having some financial difficulties, they sold and deeded the land to the appellants Eisele for an agreed purchase price of $160,000. Appellants were credited with making an $18,000 cash down payment, and they agreed to pay $40,041.45 more by assuming and paying off three of the six existing mortgages. They executed a note to the Kowals for the $101,958.55 balance, and gave a mortgage back to the Kowals on the whole property as security. The mortgage was

drawn up by the attorney who represented appellants in the transaction (not their present attorney), and is in the main the usual lengthy document contemplating the debtor-secured creditor relationship and setting forth in detail the various rights and liabilities incident thereto. Its critical provisions for our purposes, however, are those concerning discharge of the three mortgages, hereinafter referred to as the "Scholl" mortgage, "Sunnyslope" mortgage, and "First National" mortgage, which were *not* assumed by appellants. These provisions read as follows:

"The MORTGAGOR [Eisele-appellants] and MORTGAGEE [Kowal-appellees] further agree that MORTGAGEE shall comply with the following:

1. Pay in full and cause to be released of record that certain [Scholl] mortgage * * * prior to the due date of February 20, 1963.

2. Prior to September 15, 1963, pay in full and cause to be released of record that certain [Sunnyslope] mortgage * * *

3. Prior to September 15, 1963, pay in full and cause to be released of record that certain [First National] mortgage * * *

4. * * *

"It is expressly agreed that if any one of the above requirements are not complied with as agreed, then this mortgage and these presents shall be null and void, otherwise to remain in full force and effect. It is agreed however, that if the MORTGAGEE complies with the foregoing requirements, then in that event, the consideration for this mortgage shall be increased to the sum of * * * $114,408.55 * * * instead of the recited amount of * * * $101,958.-55 * * * *"

The note secured by the mortgage contained corresponding provisions, which read as follows:

"This note shall not be negotiated, sold or transferred to any person, firm or corporation until Wolodymyr J. Kowal and Orysia Kowal, his wife, have complied with the following:

1. Paid in full and caused to be released of record that certain [Scholl] mortgage * * * prior to the due date of February 20, 1963.

2. [See quoted subparagraph 2 of mortgage.] * * *

3. [See quoted subparagraph 3 of mortgage.] * * *

4. * * *

"PROVIDED, however, that if the said Wolodymyr J. Kowal and Orysia Kowal, his wife, shall comply with the foregoing, then and in that event, the face amount of this note shall be increased to the sum of * * * $114,408.55 * * *

* * * * * *

"It is expressly agreed between the parties hereto that should Wolodymyr J. Kowal and Orysia Kowal, his wife, fail to comply with any one of the terms hereof, then this note shall be void and of no effect * * * *"

The Kowals or persons acting in their behalf did not succeed in discharging the first Scholl mortgage referred to in the quoted instruments on its due date, February 20, 1963. There was testimony that the reason for this failure was that one of the two Scholl mortgagees was in Wisconsin on and just before the due date and was consequently unable to accept a tender made in Arizona at that time. In any event, the Scholl mortgage was satisfied by persons acting in behalf of the Kowals for $5,750 and discharged of record on March 12, 1963.

Apparently taking the position that failure to discharge the Scholl mortgage by its due date operated as a nullification of the note and mortgage executed by them, appellants, with the financial assistance of a relative, either purchased or satisfied the remaining Sunnyslope and First National mortgages which were the Kowals' obligation, for something over $8,000, on March

22 and April 4 of 1963. Appellants did not advise the Kowals of these transactions. These circumstances resulted in a confrontation between the parties and an attempted tender by appellees to appellants of the amount necessary to satisfy both the Sunnyslope and First National mortgages. Appellees ultimately tendered the necessary amount into court and there is no present contention by appellants that the Kowals did not do all that they could have been required to do with respect to discharging these latter two mortgages.

At the same time that appellees made their tender into court, they commenced suit to foreclose the mortgage executed by appellants. The complaint seeking foreclosure alleges default by appellants in making payments due on the mortgages assumed by them. It is now undisputed that appellants did fail to make payment on the mortgages assumed by them; that these failures were defaults under the terms of the mortgage if it was still in effect; and that the appellants have never made any payments required by the note and mortgage to be made to the Kowals. We will later refer to certain additional facts.

Stated simply, appellants take the position that after February 20, 1963, their note and mortgage ceased to have any legal existence or effect. They urge application of the rule that courts will enforce a "condition subsequent", the breach of which results in a forfeiture, where the parties have clearly provided for that result. They further contend that the trial court's holding that satisfaction of the Scholl mortgage some 20 days after the February 20, 1963 due date constituted a substantial compliance, amounted to a rewriting of the contract agreed to by the parties.

We are convinced that the trial judge correctly construed the contract in accordance with the applicable law and with the intent of the parties.

■ Where it clearly appears that the parties have agreed to a contract that will result in a forfeiture, the courts will en-

force it. Branker v. Bowman, 62 Ariz. 214, 220, 156 P.2d 898, 901 (1945). But the disfavor with which courts view forfeiture finds strong expression in the maxim that "the law abhors a forfeiture." See e. g., Mason v. Hasso, 90 Ariz. 126, 130, 367 P.2d 1, 3 (1961). One of the major authorities on the law of contracts states that courts will often refuse to enforce a forfeiture, even though "the language of the contract is wide enough to include it" if the intent to work a forfeiture under the circumstances does not appear. 5 Williston on contracts (Third Ed. 1961), Section 806, at page 858. Our Supreme Court has stated that " * * * if an agreement providing for forfeiture is capable of two constructions, that against forfeiture should be followed." Harford v. National Life & Casualty Ins. Co., 81 Ariz. 43, 46, 299 P.2d 635, 637 (1956); see also Phoenix Title & Trust Co. v. Horwath, 41 Ariz. 417, 428, 19 P.2d 82, 86 (1933). It has also been said that a forfeiture provision in a contract is enforceable if reasonable, but not otherwise. Marshall v. Patzman, 81 Ariz. 367, 371, 306 P.2d 287, 290 (1957).

■ It must be granted that there is a first-blush literal basis for appellants' position in the language of the note and mortgage which we have quoted above. But reading this language in the context of the instruments as a whole, we are unable to perceive the requisite clear intent to work a nullification under the circumstances shown. There is no provision to the effect that time was to be considered of the essence, or any provision at all apart from those quoted above indicating that the time of discharge of the three prior encumbrances was to be considered critical. The mortgage appears to be the controlling instrument in the entire purchase transaction, as it was finally consummated, and yet it does not contain any provisions delineating the rights and liabilities of the parties in the event of the failure of the Kowals to meet one of the discharge deadlines. Appellants did not, either by the mortgage contract or as a matter of fact,

**472**

incur any detriment by reason of the delay in discharging the Scholl mortgage. By the time they purchased the Sunnyslope and First National mortgages, they had ten days record notice that the Scholl mortgage had been discharged. The fact that the note and mortgage provided for increased consideration to the Kowals in the event they discharge all three of the prior encumbrances seems inconsistent with the idea that the parties contemplated an absolute forfeiture of their whole one-hundred-thousand-dollar-plus asset on account of an inconsequential 20-day delay in effectuating the first discharge.

Appellants emphasize the "distress" nature of the Kowals' sale, and the fact that the note and mortgage were specially tailored to this individual transaction. But if it had been the intention of the parties to work an absolute forfeiture of the entire obligation and its securing mortgage lien on the slightest delay in discharging one of the prior encumbrances, we think it was incumbent upon the appellants to have such an intent expressed in the contract in unmistakeable terms. Our reading of the note and mortgage in their entirety convinces us that the provisions we have quoted meant to convey in a most forceful manner an intent that the Kowals' discharge of the three prior encumbrances was prerequisite to their having any rights at all under the note and mortgage. We think the trial judge properly concluded that the subsequent discharge was a compliance or performance sufficient to keep the note and mortgage in effect.

We have no quarrel with any of the authorities cited by appellants,[1] except El Rio Oils (Canada), Ltd., v. Chase, 95 Cal. App.2d 402, 207 P.2d 885 (Cal.App.1949), which was modified and substantially reversed on rehearing at 95 Cal.App.2d 402, 212 P.2d 927 (1949; hearing denied, 1950). Some of the cases cited involve oil and gas leases, which have been held not subject to the rule disfavoring forfeiture, under some circumstances. See the *El Rio Oils* decisions, supra.

■ Appellants' only other contention is that the Kowals breached the "no-transfer" clause in the note, and that the appellees Neuman, in whose favor the final judgment ran, were not proper parties plaintiff. The clause in question is the first provision in the excerpts from the note quoted above. It is undisputed that in December, 1962, the Kowals and the Neumans entered into an agreement whereby they placed the note and mortgage in the possession of the appellee Swartz, an attorney, as trustee, as security for monies that the Neumans were to advance to the Kowals to discharge the three prior encumbrances. There was no evidence that the note itself was expressly assigned, but the Kowals executed an "Assignment of Mortgage" which conditionally assigned that instrument to the trustee Swartz "Together with the obligation therein described * * *."

Appellants contend that the note necessarily accompanies an assignment of the mortgage. Actually, it is the converse that is true; the mortgage is incident to the obligation which it secures and "goes with the note." Hill v. Favour, 52 Ariz. 561, 568, 84 P.2d 575, 578 (1938). But assuming an altogether effective assignment of the obligation evidenced by the note to the trustee Swartz, the trial court held that such a conditional security arrangement was not a negotiation, sale or transfer within the meaning of those terms in the prohibitory clause in the note. Appellants have not cited any authority which would indicate that this ruling was in error. We think the purpose of the clause was to prevent any person from arguably attaining any status as a bona fide purchaser of the note prior to satisfaction of the three prior encumbrances, and we agree with the trial

1. E. g., Citizens Building & Loan Ass'n of Emporia v. Jones, 149 Kan. 302, 87 P.2d 633 (1939); Rosecrans v. Pacific Electric Ry. Co., 21 Cal.2d 602, 134 P.2d 245 (1943); Shaw v. Guaranty Liquidating Corp., 67 Cal.App.2d 660, 155 P.2d 53 (Cal.App.1945); Wilson v. Security-First National Bank of Los Angeles, 84 Cal.App.2d 427, 190 P.2d 975 (Cal.App. 1948).

judge that the clause was not offended by the security arrangement. The Kowals later conveyed their entire interest in the note and mortgage to the Neumans after satisfaction of all three prior encumbrances, so that the Neumans became the real parties in interest and proper parties plaintiff.

Affirmed.

HAIRE and JACOBSON, JJ., concur.