Filed 3/18/13  Lin v. City of Pleasanton CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JENNIFER LIN et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> CITY OF PLEASANTON et al., <br><br> Defendants and Respondents. | A132046 <br><br> (Alameda County <br> Super. Ct. No. RG10519153) |

Plaintiffs Jennifer and Frederic Lin (the Lins) appeal from a judgment dismissing their complaint against defendants City of Pleasanton and the City Council of the City of Pleasanton after the trial court sustained a general demurrer without leave to amend.  The Lins ask us to reinstate their lawsuit seeking enforcement of a development agreement. We affirm the judgment in favor of defendants.

# FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.     *Background*

The Lins own 562 acres of land in the City of Pleasanton.  In November 2003, the Lins' agents, James Tong and Charter Properties, sought approval for (1) a planned unit development (PUD) of the Lins' acreage, which was to be known as "Oak Grove" and was designated PUD-33; and (2) a development agreement to develop the project site in accordance with the general plan, the requested PUD and other city approvals.

On November 6, 2007, the city adopted two ordinances:  ordinance No. 1961, "An Ordinance Approving the Application of James Tong, Charter Properties (Oak Grove Development), for PUD Plan Approval, As Filed Under Case PUD-33;" and ordinance No. 1962, "An Ordinance Approving a Development Agreement Between the City of Pleasanton and Jennifer Lin and Frederic Lin Regarding the Oak Grove Development." The ordinances had mirror provisions as to the effect of any voter referendum challenging the ordinances.  Section 5 of ordinance No. 1961, read: "This ordinance shall be effective thirty (30) days after its passage and adoption, provided, however, that if ordinance No. 1962 is set aside by referendum, this ordinance shall be of no force or effect."  Similarly, section 5 of ordinance No. 1962, read: "This ordinance shall be

---

[1]     Because the Lins's lawsuit was resolved by demurrer, "we accept as true the properly pleaded material factual allegations of the complaint, together with facts that may be properly judicially noticed." (*Hernandez v. City of Pomona* (1996) 49 Cal.App.4th 1492, 1497.)  The trial court granted the parties' requests for judicial notice of (1) certain documents and the judgment filed in prior litigation between the Lins and City Manager Nelson Fialho (*Lin v. Fialho*, Super. Ct. of Alameda County, No. VG08416511), and (2) the City of Pleasanton Resolution No. 10-389 reciting the fact of the Special Municipal Elections held on June 8, 2010 declaring the result and such other matters as provided by law.  Both parties refer to the proffered documents, and we have considered them to the extent they are relevant to our resolution of the appeal. However, we conclude the trial court properly denied the Lins's request to take judicial notice of transcribed excerpts of the certified audio tape of a November 6, 2007, City Council meeting.  (See *Bach v. McNelis* (1989) 207 Cal.App.3d 852, 865.)  We also conclude the trial court properly denied as untimely the Lins's request for judicial notice of Fialho's responsive pleading in the *Lin v. Fialho* matter, as well as the entire administrative record lodged in that litigation.

effective thirty (30) days after its passage and adoption, provided, however, that if Ordinance No. 1961 is set aside by referendum, this ordinance shall be of no force or effect."

Within thirty days of the adoption of the ordinance No. 1961, a referendum petition was filed with the city clerk seeking to set aside that ordinance. The Lins filed a petition for a writ of mandate requiring the city clerk to reject the referendum petition. Although the Lins were successful in the trial court, the proponents of the referendum petition filed an appeal. Our colleagues in Division Five concluded that the referendum petition was properly filed. (*Lin v. City of Pleasanton* (2009) 176 Cal.App.4th 408, 426.) The trial court was directed to enter an order "denying the writ and requiring that the city either repeal ordinance No. 1961 or submit the ordinance to the voters at an election . . . ." (*Ibid*.) On December 15, 2009, the trial court entered an order authorizing the city council to either repeal ordinance No. 1961 or place the referendum on the ballot for voter consideration. On January 19, 2010, the city clerk certified the referendum petition. The city council ordered that the referendum petition be submitted to the voters at an election to be held on June 8, 2010.

During the pendency of the referendum petition litigation, the Lins filed a successful separate petition for writ of mandate requiring the city manager to sign the development agreement. On November 20, 2008, the trial court directed the city manager to sign the development agreement. The development agreement, signed by the city manager, was recorded on December 1, 2008.

### B.    *Current Lawsuit*

On the day of the June 8, 2010, election and before the outcome was known, the Lins commenced this litigation seeking the equitable relief of specific performance of the development agreement and related declarative and injunctive relief against defendants. According to the Lins, the development agreement became an effective and binding contract on December 7, 2007, thirty days after ordinance No. 1962 was adopted and during which period no referendum challenging ordinance No. 1962 was filed, that the referendum challenging ordinance No. 1961 could not affect the development agreement,

3

and that even if the ordinance No. 1961 was set aside by referendum, rendering ordinance No. 1962 without force and effect, the development agreement would remain in full force and effect. The Lins also alleged they had asked the city to take action to protect their vested rights pursuant to the express terms of the development agreement, but the city had declined to do so. In the first cause of action, labeled "Specific Performance of Contract Breached by Anticipatory Repudiation," it was alleged the development agreement was an enforceable contract and the city's refusal to comply with the terms of the agreement constituted a present breach by anticipatory repudiation. In the second cause of action, labeled "Breach of the Covenant of Good Faith and Fair Dealing," it was alleged the city's refusal to take steps to preserve the Lins's vested rights under the development agreement breached the covenant of good faith and fair dealing because the city knew or should have known that its refusal would give rise to a claim by the proponents of the ordinance No. 1961 referendum, and possibly others, that the development agreement was nullified if ordinance No. 1961 was set aside by referendum. In the third cause of action, labeled "Declaratory and Injunctive Relief," the Lins sought certain declarations, including that "[e]ven if [ordinance No. 1961] were set aside by referendum, and even if [ordinance No. 1962] were set aside due to the [language in section five], the Development Agreement itself will remain in full force and effect."

Four months after the election in which ordinance No. 1961 was set aside by referendum, defendants filed a general demurrer,[2] which was opposed by the Lins. The trial court sustained the demurrer to each cause of action without leave to amend. In its written order, the court found, in pertinent part, that "the unambiguous language of Ordinance No. 1962 contemplates that should Ordinance No. 1961 be repealed by referendum, Ordinance No. 1962 shall have no force and effect. The only reasonable interpretation of this language is that it constitutes a conditional acceptance, approving the development agreement only so long as the condition of Ordinance No. 1961's repeal

---

[2] The trial court granted permission for the filing of opening and reply briefs by Save Pleasanton's Hills, Kay Ayala, and Allen Roberts as amici curiae in support of defendants' demurrer.

4

by referendum did not come to pass. Once the referendum occurred, the condition came to pass, and no contractual duty was created, or alternatively, at best, was discharged. [¶] It is not disputed that it was known by all involved parties that Ordinance No. 1961 was to be the subject of a referendum as early as the day the ordinances were passed on November 6, 2007. Ordinance No. 1961 and [Ordinance] No. 1962 are inextricably entwined and clearly designed to be read and interpreted together. See for example, *Lin v. City of Pleasanton*[, *supra*,] 176 Cal.App.4th [at p.] 414 (the development agreement at issue is referenced as being attached as Exhibit D to Exhibit B of Ordinance No. 1961.)"[3] The trial court entered a judgment in favor of defendants. The Lins timely appeal.

## DISCUSSION

Our review of the trial court's ruling sustaining defendants' demurrer is de novo. "[W]e do not review the validity of the trial court's reasoning but only the propriety of the ruling itself. [Citation.]" (*Wilner v. Sunset Life Ins. Co.* (2000) 78 Cal.App.4th 952, 958.)[4] "We independently evaluate the complaint, construing it liberally, giving it a reasonable interpretation, reading it as a whole, and viewing its parts in context. [Citation.] Treating as true all material facts properly pleaded, we determine de novo whether the factual allegations of the complaint are adequate to state a cause of action under any legal theory, regardless of the title under which the factual basis for relief is stated. [Citation.]" (*Burns v. Neiman Marcus Group, Inc.* (2009) 173 Cal.App.4th 479, 486-487, fn. omitted.) "A judgment of dismissal after a demurrer has been sustained without leave to amend will be affirmed if proper on any grounds stated in the demurrer, whether or not the [trial] court acted on that ground." (*Carman v. Alvord* (1982) 31 Cal.3d 318, 324.) When a demurrer is sustained without leave to amend, " ' we decide

---

3 The trial court also ruled that to the extent the Lins's complaint sought declaratory relief that ordinance No. 1962 was invalid, that relief was barred by the statute of limitations. In their reply brief, the Lins note that they are not seeking such relief and therefore "this aspect of the trial court's ruling is irrelevant to the[ir] . . . appeal."

4 Consequently, we do not separately address the Lins's arguments challenging certain statements made by the trial court in its order sustaining the demurrer without leave to amend.

5

whether there is a reasonable possibility that the defect can be cured by amendment; if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff.' [Citations.]" (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126.)

By this appeal, the Lins seek to reinstate their lawsuit against defendants based on the development agreement that was adopted by the City Council in ordinance No. 1962. The "crux" of their appeal is that a fully vested development agreement cannot be retroactively abrogated by the electorate through the referendum process. According to the Lins, "[g]iving full effect to Section 5 in [ordinance No. 1962] means only that the [ordinance] was set aside. It does not, and could not, reach the Development Agreement after the Development Agreement had taken effect and bec[a]me a vested, enforceable contract." We conclude the Lins's arguments are unavailing.

In addressing the Lins's arguments, our review of ordinance No. 1962 is "de novo." (*Holmes v. Jones* (2000) 83 Cal.App.4th 882, 888.) "The goal of statutory construction is to ascertain and apply the intent of the Legislature. To determine that intent, a court first looks to the statutory words themselves, giving to the language its usual and ordinary import. The court construes statutory words in context, keeping in mind the statutory purpose. Statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible. [Citation]. Where construction of a statute is necessary, interpretation should produce a reasonable result. Where uncertainty exists, the court must consider the consequences that will flow from a particular interpretation. [Citation.] If a statute gives rise to two alternative interpretations, the court should follow the one leading to the more reasonable result." (*Id*. at pp. 888-889.) "[W]e give 'significance to every word, phrase, sentence, and part of an act in pursuance of the legislative purpose. [Citation.]' [Citations.] We avoid an interpretation that renders any portion of the statute superfluous, unnecessary, or a nullity; this is so because we presume that the Legislature does not engage in idle acts." (*Teachers' Retirement Bd. v. Genest* (2007) 154 Cal.App.4th 1012, 1028.)

6

Ordinance No. 1962, "ordain[ed]" as follows:  [¶] Section 1. Finds that the proposed Development Agreement between the City of Pleasanton and Jennifer Lin and Frederic Lin is consistent with the City's General Plan.  [¶] Section 2. Approves the Development Agreement between the City of Pleasanton and Jennifer Lin and Frederic Lin, a copy of which is attached hereto and incorporated herein by this reference, and the final form of which is to be approved by the City Attorney.  [¶] Section 3. The City staff is directed to cause a Notice of Determination to be filed pursuant to Section 5.4(g) of Resolution No. 77-66.  [¶] Section 4. A summary of this ordinance shall be published once within fifteen (15) days after its adoption in 'The Valley Times,' a newspaper of general circulation published in the City of Pleasanton, and the complete ordinance shall be posted for fifteen (15) days in the City Clerk's office within fifteen (15 days) after its adoption.  [¶] Section 5. This ordinance shall be effective thirty (30) days after its passage and adoption, provided, however, that if Ordinance No. 1961 is set aside by referendum, this ordinance shall be of no force and effect."

Thus, by section two of ordinance No. 1962, the City Council enunciated its approval of the development agreement.  However, the approval was not absolute but was made expressly subject to a condition subsequent, namely, a referendum setting aside ordinance No. 1961, as enunciated in section five of the ordinance.  (Civ. Code, §§ 1434 ["[a]n obligation is conditional, when the rights or duties of any party thereto depend upon the occurrence of an uncertain event"], 1438 ["[a] condition subsequent is one referring to a future event, upon the happening of which the obligation becomes no longer binding upon the other party, if he chooses to avail himself of the condition"].)  Once ordinance No. 1961 was set aside by referendum, ordinance No. 1962, including section two (representing the City Council's approval of the development agreement), was "of no force and effect."

We are not persuaded by the Lins's arguments that the language in ordinance No. 1962 can be read to support a claim that the development agreement survives despite the referendum setting aside ordinance No. 1961 rendering ordinance No. 1962 of no force and effect.  According to the Lins, the words "of no force and effect" only address

7

ordinance No. 1962 itself and do "not speak to" the development agreement. However, reading ordinance No. 1962 in context, it is clear that the City Council intended that the ordinance (representing its approval of the development agreement) would not continue to be valid and subsisting if ordinance No. 1961 was set aside by referendum. The words " 'no force and effect' have a clear and unmistakable meaning, a meaning which leaves no doubt as to the intention of" the City Council. (*Shaw v. Guaranty Liquidating Corp.* (1945) 67 Cal.App.2d 660, 663 (*Shaw*).) Thus, on the happening of the specified event (referendum setting aside ordinance No. 1961), the City Council's requisite approval to enter into the development agreement (represented by section two of ordinance No. 1962) was of no further force and effect. The consequences of the successful referendum setting aside ordinance No. 1961 was that the City was relieved of its obligation to perform under the development agreement and the Lins were divested of any rights to enforce the agreement or seek damages for its breach. Our interpretation of ordinance No. 1962 gives effect to the actual words used in that ordinance, and does not add any terms as suggested by the Lins.[5] The consequential effect of the successful referendum setting aside ordinance No. 1961 and its effects on ordinance No. 1962 and the validity of the development agreement were self-executing and do not require us to add any terms to

---

[5] In a footnote in their opening brief, the Lins argue, "The public policy reasons prohibiting insertion of terms into an ordinance are particularly important here, where the referendum process is involved. The Elections Code establishes strict rules regarding the referendum process that are designed to ensure that there is no confusion about what the voters are being asked to refend. Cal. Elec. Code, § 9235, *et seq.* [The referendum's proponent's] desire to bypass the Elections Code and challenge two ordinances with a single referendum – essentially a referendum 'short cut' – is not deserving of judicial rescue. Doing so would establish precedent that could foster gamesmanship and lead to voter confusion." However, as noted by the trial court, the referendum petition challenging ordinance No. 1961 "was comprised of a copy of ordinance No. 1961, the CEQA findings attached to and incorporated into that ordinance as exhibit A, the conditions of approval and attached to and incorporated into that ordinance as exhibit B, and *the development agreement* attached to the conditions of approval as exhibit D." (*Lin v. City of Pleasanton, supra,* 176 Cal.App.4th at p. 414, italics added.) Thus, the voters were given notice of the development agreement that had been approved by the City Council and would govern the development of the Lins's property if the referendum to set aside ordinance No. 1961 was not successful.

the development agreement as suggested by the Lins. (See *Athletic Club v. Board of Harbor Commrs.* (1933) 130 Cal.App. 376, 387-388 [if governing statute itself provides that happening of condition subsequent terminates obligation under contract, then the condition is self-executing and becomes part of the contract]). [6]

We see no merit to the Lins's argument that ordinance No. 1962 must be construed so as to avoid a divesture or forfeiture of their rights to develop their property pursuant to the development agreement. "[T]he general rule that equity will not ordinarily enforce a forfeiture does not apply [because] . . . on the happening of the specified event" (a successful referendum setting aside ordinance No. 1961), ordinance No. 1962, including the approval of the development agreement in section two, was of no force and effect. (*Shaw, supra,* 67 Cal.App.2d at p. 663.) The Lins entered into the development agreement knowing the terms of ordinance No. 1962. The development agreement ended when ordinance No. 1961 was set aside by referendum and ordinance No. 1962 became of no force and effect.[7]

Nor do we see any merit to the Lins's argument that an interpretation of the effect of the referendum on ordinance No. 1961 so as to invalidate ordinance No. 1962 (including the approval of the development agreement) is not permissible because it unconstitutionally impairs their contractual rights. The Lins's argument is based on a

---

[6]     For the same reasons stated in the text of this opinion, we deny the Lins's request for leave to amend their complaint. The Lins ask permission to amend the complaint to allege that (1) after the suspension of ordinance No. 1961 defendants treated the development agreement as an effective contract by amending the general plan map on July 21, 2009, to include the proposed Oak Grove development, and (2) defendants disavowed the agreement after the successful referendum setting aside ordinance No. 1961, and failed to protect the Lins's vested rights in the development agreement on the successful referendum setting aside ordinance No. 1961. However, such allegations, even if true, would not justify granting the Lins any relief. (See, also, *First Street Plaza Partners v. City of Los Angeles* (1998) 65 Cal.App.4th 650, 669 ["[n]o case has ever held that a city may be bound to a contract by estoppel"].)

[7]     *Wooster v. Department of Fish & Game* (2012) 211 Cal.App.4th 1020, 1026-1029, cited by the Lins, is factually distinguishable from this case, and does not require a different result.

9

general rule that " 'the repeal of a statute does not ordinarily divest a right that is vested and complete at the time of the repeal.' " (*State of California v. Industrial Accident Commission* (1959) 175 Cal.App.2d 674, 676.) However, the referendum setting aside ordinance No. 1961, was not the "repeal" of ordinance No. 1962, or "the equivalent of a retroactive referendum on [ordinance No. 1962]," as suggested by the Lins. Instead, ordinance No. 1962 expressly provided for the divesting or impairing of the Lins's contractual rights on the occurrence of an express condition (referendum setting aside ordinance No. 1961) described in ordinance No. 1962 for that purpose.

Finally, we are not persuaded by the Lins's argument that defendants are estopped from challenging the validity of the development agreement because that issue was conclusively resolved in *Lin v. Fialho*. In that earlier litigation, the Lins argued that the city manager was required to sign the development agreement because the City Council had adopted ordinance No. 1962, the development agreement had become effective when ordinance No. 1962 became effective, and ordinance No. 1961 had not been set aside by referendum. In ruling in the Lins's favor, the trial court held only that "[p]ursuant to applicable law, the City Manager has a present ministerial duty to sign the Development Agreement approved by the Pleasanton City Council through adoption of Ordinance No. 1962 on November 6, 2007 . . . ." At the hearing on the matter, the trial court specifically explained the basis for its ruling: "The City manager does have the ministerial duty to sign the document. He had a ministerial duty almost a year ago to do it and he hasn't done it. The reasoning by the City manager is unavailing. The City manager does not have the discretion to make a determination that the timing is not right. *The City Council does*, but the City manager doesn't." (Italics added.) Thus, we reject the Lins's assertion that the trial court in *Lin v. Fialho* must have found the development agreement was valid as it "could not order the [city] manager to sign a suspended, ineffective agreement because there would be no ministerial duty to do so." Even though the trial court accepted the Lins's argument as to the city manager's ministerial duty, its comments and ruling demonstratively show it neither resolved, nor necessarily had to

10

resolve, the specific issue in this litigation – the effect of the successful referendum setting aside ordinance No. 1961 on the validity of the development agreement.[8]

We therefore conclude the trial court properly sustained defendants' demurrer without leave to amend. Accordingly, we affirm the judgment in favor of defendants. [9]

## DISPOSITION

The judgment is affirmed. Defendants are awarded costs on appeal.

_____

Jenkins, J.

We concur:

_____

McGuiness, P. J.

_____

Siggins, J.

[8] In light of our determination, we do not need to address the parties' other contentions.

[9] The parties request that we take judicial notice of certain documents. The Lins ask us to consider the following documents: (1) Fialho's "response brief in opposition to petition for writ of mandate" in the *Lin v. Fialho* litigation, which document had not been timely submitted or considered by the trial court; and (2) an excerpt of the City of Pleasanton's General Plan, adopted July 21, 2009, and as amended October 19, 2010, which was not filed in the trial court. Defendants ask us to consider the following documents, which were not filed in the trial court: (1) certain documents filed in the Lins's litigation relating to their challenge to the ordinance No. 1961 referendum petition that was resolved in *Lin v. City of Pleasanton, supra,* 176 Cal.App.4th 408, and (2) certain documents filed in a new action (*Lin v. City of Pleasanton*, Alameda County Superior Court Case No. RG11591651): Lins's complaint for damages for breach of contract based on the development agreement, filed August 22, 2011, and an order, filed January 5, 2012, abating the new action pending resolution of this appeal. Because consideration of the parties' proffered documents are not necessary to resolve the issues before us, we deny the requests for judicial notice as moot.